## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **PAMELA MCCARTY AND NICK MCCARTY,** | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:15-CV-518-L** |
| **HILLSTONE RESTAURANT GROUP d/b/a HOUSTON'S RESTAURANT,** | § § § | |
| Defendant. | § § | |

### MEMORANDUM OPINION AND ORDER

Before the court is Defendant Hillstone Restaurant Group's Motion for Summary Judgment (Doc. 46), filed March 24, 2016. After careful consideration of the motion, response, reply, admissible summary judgment evidence, and applicable law, the court **grants** Defendant Hillstone Restaurant Group's Motion for Summary Judgment (Doc. 46) and **dismisses with prejudice** this action.

## I.    Factual and Procedural Background

On December 1, 2014, Plaintiffs Pamela McCarty ("Mrs. McCarty") and Nick McCarty (Mr. McCarty") (collectively, "Plaintiffs") originally brought this action in the 191st Judicial District of Dallas County, Texas, against Defendants Hillstone Restaurant Group d/b/a Houston's Restaurant ("Hillstone," "Houston's," or "Defendant") and Houston's general manager Ryan Beard ("Beard"). On February 13, 2015, Hillstone and Beard removed the action to federal court based on diversity.

In their Original Petition, Plaintiffs asserted a claim for negligence against Defendants.  On August 19, 2015, the court granted Hillstone's Rule 12(b)(6) Motion to Dismiss after determining that Plaintiffs had not stated a claim upon which relief could be granted under either a negligent activity or premises liability theory under Texas law.  Instead of dismissing the action, the court allowed Plaintiffs to amend their pleadings with respect to their premises liability claim.

On August 26, 2015, Plaintiffs filed their First Amended Complaint ("Complaint") against only Hillstone in which they assert a claim of premises liability under Texas law.  As a result, only Plaintiffs' premises liability claim against Hillstone remains.  The premises liability claim is based on Plaintiffs' contention that Mrs. McCarty, while patronizing Houston's with her husband and two friends on February 16, 2014, slipped and fell on her way to the bathroom, causing her to break her hip and dislocate her femur.  Pl.'s Compl. ¶¶ 2.05-2.06; Pl.'s Resp. to Summ. J. Mot. 7 ("On her way to the restroom, Mrs. McCarty was making her way past the kitchen when one of her crutches slipped on the tile causing her to fall, and the tile floor outside the kitchen, which one must traverse in order to get to the restroom, was sticky, slick and greasy and caused Mrs. McCarty's crutch to slip from underneath her.") (citations omitted).  On March 24, 2016, Hillstone moved for summary judgment on Plaintiffs' premises liability claim, which is now ripe.

## II.    Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita*, 475 U.S. at 587.  (citation omitted).  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim.  *Ragas*, 136

F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

## III.    Undisputed Relevant Facts

1.    On February 16, 2014, the date of Mrs. McCarty's accident, Mrs. McCarty patronized Houston's with her husband and friends Valerie and Don Westfall.  At the time, Mrs. McCarty was on crutches because of an unrelated accident that occurred in August 2013 and resulted in her falling from a ladder and shattering her heel.

2.    On her way to the public restrooms in Houston's, Mrs. McCarty passed by a tiled area that was adjacent to and outside of the restaurant's kitchen.  The tile itself was a dark black color. While walking past this area, Mrs. McCarty fell and broke her hip.

3.    To get to the public restrooms in Houston's, it is necessary to walk past the area adjacent to the kitchen where Mrs. McCarty fell.  On the date in question, the tiled flooring extended from the area adjacent to the kitchen to the public restrooms.  The area where Mrs. McCarty fell was frequented by waitstaff going to and from the kitchen and restaurant patrons going to and from the public restrooms.

4.    Mrs. McCarty did not see any substances on the floor before she fell. When asked during her deposition, Mrs. McCarty was unable to say and did not know what foreign substance or substances, if any, were on the floor.

5.    Prior to Mrs. McCarty falling, no employee or manager of Houston's observed or was actually aware that there was a foreign substance of any kind on the floor in the area of the restaurant where Mrs. McCarty fell.

6.      After Mrs. McCarty fell, her husband and friend Valerie Westfall came to her aid.  Neither
actually witnessed Mrs. McCarty fall.  Hillstone employees Thomas Greer ("Greer") and
Will Manning ("Manning") are the only persons who witnessed Mrs. McCarty fall.

## IV.    Analysis

### A.      Plaintiffs' Premises Liability Claim and Applicable Law

Hillstone contends that it is entitled to judgment on Plaintiffs' premises liability claim

because there is no evidence that it placed a substance on the restaurant floor where Mrs. McCarty

fell, that it had actual knowledge that a substance was on the floor, or that a substance was on the

floor long enough to constitute constructive notice.  Hillstone further contends that there is no

admissible evidence that the tile floor was a dangerous condition that posed an unreasonable risk of

harm or that Mrs. McCarty's accident was caused by the allegedly defective condition of the tile

floor.

Plaintiffs respond that they have presented evidence that is sufficient to raise a genuine

dispute of material fact as to whether: (1) Defendant had actual or constructive knowledge of the

allegedly dangerous condition of the tile floor where Mrs. McCarty fell; (2) the tile floor was a

dangerous condition that posed an unreasonable risk; and (3) Mrs. McCarty's fall was caused by the

allegedly defective condition of the tile floor.  The notice issue is dispositive of Defendant's

summary judgment motion and Plaintiffs' premises liability claim.  The court's opinion, therefore,

focuses on this issue.

In Texas, a premises owner owes its invitees a duty to exercise reasonable care to protect

them from dangerous premises conditions that were known or reasonably discoverable, but a

premises owner is not an insurer of its invitees' safety. *See Wal-Mart Stores, Inc. v. Reece*, 81

S.W.3d 812, 814 (Tex. 2002) (citing *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex.

1998)).  To prevail on a premises liability claim, a plaintiff must prove:

> (1) Actual or constructive knowledge of some condition on the premises by the owner/operator;

> (2) That the condition posed an unreasonable risk of harm;

> (3) That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

> (4) That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

*Gonzalez*, 968 S.W.2d at 936 (citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992)). A

premise owner's knowledge of a potentially harmful condition can be established by proof that: (1)

the defendant or the defendant's employees caused the harmful condition; (2) proof that employees

either saw or were told of the harmful condition prior to the plaintiff's injury; or (3) proof that the

harmful condition was present for so long that it should have been discovered in the exercise of

reasonable care.  *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 892 (5th Cir. 2000) (citing

*Keetch*, 845 S.W.2d at 264.  To establish actual knowledge, a plaintiff must prove either that "the

defendant placed the substance on the floor" or that "the defendant actually knew that the substance

was on the floor." *Reece*, 81 S.W.3d at 814 (citations omitted).  A defendant's actual knowledge can

be established by direct or circumstantial evidence when the evidence, directly or by reasonable

inference, supports such a conclusion; however, "meager circumstantial evidence from which equally

plausible but opposite inferences may be drawn is speculative and thus legally insufficient to support

a finding." *Gonzalez*, 968 S.W.2d at 936; *University of Tex. at El Paso v. Muro*, 341 S.W.3d 1, 5

(Tex. App.—El Paso 2009, no pet.). Evidence that the premises owner received reports of the

potential danger, or complaints of prior injuries can support an inference of actual knowledge. *See*

*University of Tex.–Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008).  "When circumstantial evidence is so slight that the choice between opposing plausible inferences amounts to nothing more than speculation, it is legally no evidence at all." *Muro*, 341 S.W.3d at 5 (citing *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex. 2001) ("[I]n cases with only slight circumstantial evidence, something else must be found in the record to corroborate the probability of the fact's existence or non-existence.")).

### B.    Actual Knowledge of Condition

To demonstrate that Defendant had actual knowledge of the allegedly dangerous condition, Plaintiffs rely on two written statements by Houston's employee Greer, dated February 21, 2014. In his original written statement, Greer states "I did [sic] see any food/debris, any water, moister [sic], or other obstacle in which [Mrs. McCarty] could have slipped or tripped on in the area in which she was walking and eventually fell."  Pl.'s App. 77.  In the beginning of Greer's second amended statement, the word "not" appears before the word "see."  *Id.* at 78.  Plaintiffs' contend that this inconsistency in Greer's two statements alone is sufficient to raise a genuine dispute of material fact as to whether Defendant had actual or constructive knowledge of the condition of the tile floor, and a "jury should be allowed to determine the credibility of Mr. Greer, to determine which of his two stories to believe."  Pl.'s Resp. 9.  The court disagrees.

This is not a situation in which a party attempts to support or defeat a summary judgment motion by producing a witness affidavit that is inconsistent with or contradicts the witness's prior deposition testimony. Instead, both of Greer's statements were produced by Defendant during discovery before Greer's deposition.  During Greer's deposition, which was conducted on March 1, 2016, Plaintiffs' counsel acknowledged that the amended statement, or what Greer referred to as an "addendum" or "corrections" to his first statement, was produced by Defendant in response to

Plaintiffs' discovery requests a couple of months before Greer's deposition.  Pl.'s App. 47-48.

Plaintiffs, nevertheless, contend that the corrected statement is untrustworthy because both

statements are dated February 21, 2014, but the amended or corrected statement, which includes the

word "not" before "see," was not produced by Defendant until December 2015.

As correctly noted by Defendant, however, Greer was questioned extensively in his

deposition regarding the two versions of his statement.  When Plaintiffs' counsel first presented the

earlier version of the statement to Greer and asked whether this was his statement and whether it

conformed with his memory of the events on the date Mrs. McCarty fell, Greer confirmed that this

was his statement but explained that there was also a subsequent corrected version of the statement,

which substituted "I did see any food" with "I did not see any food/debris."  *Id.* at 47.  Greer

provided this clarification without any prompting and before being confronted with the corrected

statement and the differences between the two versions.  Greer further explained that he typed the

original statement himself, which he referred to as a draft, and he discovered the mistake when

reading the statement after "submitt[ing] it," and requested that the final version of the statement be

corrected to include the word "not."  *Id.* at 49.  Greer testified that he discovered the error two

months before his deposition when he met with defense counsel for the first time.

When asked why both versions of his statement were dated February 21, 2014, although,

according to Greer's testimony, the corrected version was not prepared until two months before his

deposition, Greer explained that he did not sign the second statement; he instead requested that his

original February 21, 2014 statement be corrected. According to Greer, the corrected version of his

statement should have been given to Plaintiffs' counsel because this version comported with what

he meant to say, and the original statement "I did see any food, any water, any moisture" was not grammatically correct and "didn't make sense" as written.  *Id.* at 51.

The court agrees that the original statement makes no sense grammatically with the omission of the word "not" before the word "see."  To make grammatical sense, other words would have to be omitted and added.  In other  words, for the omission of the word "not" to make grammatical sense, the statement would have to read as follows: "I did see food/debris, water, moisture, and other substances that Mrs. McCarty could have slipped or tripped on in the area where she was walking and eventually fell." Bluntly stated, a reasonable person reading the initial statement by Greer and the context in which it was made would readily say in a perturbed manner, "This makes no sense!"

The remainder of Greer's deposition is consistent with his testimony regarding the original and final corrected versions of his statement.  Greer even corrected Plaintiffs' counsel whenever a question included the word "slipped."  *Id.* at 52-54.  According to Greer, who was following behind Mrs. McCarty before she fell, Mrs. McCarty did not slip on anything but instead lost her balance or "misstepped" while walking on crutches.  *Id.*  By misstep, Greer explained that he meant Mrs. McCarty lost her balance as result of misplacing her crutch and "stepped in a way to where she lost her footing and was unable to support her weight."  *Id.* at 53-54.

Thus, when viewed in conjunction with his deposition testimony, Greer's statements do not create a genuine dispute of material fact as to his or Defendant's knowledge. Greer's statements are obviously two versions of the same statement, one of which was the original draft, and the subsequent a corrected version of the first to correct a typographical error. Moreover, under the Federal Rules of Civil Procedure, parties are required to "supplement or correct" their disclosures and discovery responses, Fed. R. Civ. P. 26(e), and Plaintiffs cite no authority to show that

Defendant's compliance with Rule 26(e) is sufficient to give rise to a genuine dispute of material fact.

Plaintiffs also contend, without explanation, that the Erata to Greer's deposition includes "substantive changes" to his deposition.  In addition, Plaintiffs note: "One further curious piece to this puzzle of what Mr. Greer did, or didn't see is the fact that [his] 'Erata' is missing page 2 . . . [and] numbers page[s] 1, 3, 4 and 5."  Pl.'s Resp. 9.  The court has reviewed the Erata sheets to Greer's deposition, and contrary to Plaintiffs' assertion, they do not include any substantive changes. The Erata sheets instead include clarifications or changes that do not materially affect the substance of Greer's deposition testimony.  Additionally, the importance that Plaintiffs attribute to the absence of Erata page 2 or the misnumbering of these pages is based on speculation and unsupported conjecture, which is insufficient to raise a genuine dispute of material fact as to Greer's or Defendant's actual or constructive knowledge.  Therefore, viewing the evidence in the light most favorable to Plaintiffs, the court discerns no inconsistency in Greer's original and corrected statement or the Erata to his deposition that is sufficient to create a genuine fact issue and concludes that the purported inconsistencies are insufficient to preclude summary judgment.

Even assuming that the original version of Greer's statement establishes that he saw moisture or other substances on the tile floor when he witnessed Mrs. McCarty fall, such evidence does not create a genuine dispute of material fact because Plaintiffs have presented no evidence that Greer saw the moisture or any other substances on the floor *before* Mrs. McCarty fell.  *Threlkeld*, 211 F.3d at 892 (citing *Keetch*, 845 S.W.2d at 264).  Likewise, there is no evidence that Defendant or any of its other employees observed or were actually aware that the floor was wet or had any other substances on it *before* Mrs. McCarty fell.  Accordingly, Plaintiffs have failed to establish that

Hillstone had actual knowledge of the unidentified substance on the floor of Houston's where Mrs. McCarty fell.

### C.       Constructive Knowledge of Condition

To support their contention that Defendant had constructive knowledge or should have been aware of the allegedly dangerous condition of the tile floor where Mrs. McCarty fell, Plaintiffs point to: (1) Mrs. McCarty's deposition testimony of how the floor felt while she was lying on it after falling; (2) Valerie Westfall's deposition testimony that she noticed water or another liquid splattered on the tile floor where Mrs. McCarty fell; (3) Mr. McCarty's deposition testimony that he saw water droplets and pieces of lettuce on floor; and (4) Beard's deposition testimony that it was possible that Houston's employees could have tracked or spilled water or food in the area where Mrs. McCarty fell.  Plaintiffs contend that this evidence, as well as evidence that Defendant's employees regularly traverse the area where Mrs. McCarty fell, is sufficient circumstantial evidence to establish that Defendant created the condition on the floor and, thus, should have known of the condition. Alternatively, Plaintiffs contend that Defendant should have discovered the condition because its employees frequently passed through the area where Mrs. McCarty fell.

Plaintiff's evidence is insufficient to create a genuine dispute of material fact as to whether Defendant had constructive knowledge of the unidentified substance and allegedly dangerous condition of the tile floor where Mrs. McCarty fell.  Mr. and Mrs. McCarty, and Mrs. McCarty's friend gave conflicting accounts of what they saw or felt on the floor *after* Mrs. McCarty fell, although they all seemed to agree that the floor had some drops of an unidentified liquid.  The parties' evidence, however, establishes that the substance, if any, on the floor was not conspicuous because Mrs. McCarty testified that the tile floor was a dark color and even she did not see anything

on the floor before falling.  Defendant's employees similarly testified they did not see any substance on the floor before Mrs. McCarty fell.  Even assuming, as Plaintiffs' contend, that the floor had drops of liquid on it and was slippery *before* Mrs. McCarty fell, Plaintiff have presented no evidence of how long the unidentified substance was on the floor. Without evidence demonstrating that the unidentified substance remained on the floor long enough for Defendant to discover it, Plaintiffs' premises liability claim fails despite their evidence that the area was heavily trafficked by Defendants' employees and regardless of whether the condition of the floor was conspicuous.  This failure on Plaintiff's part is best illustrated by *Wal-Mart Stores, Inc. v. Reece*, in which the Texas Supreme Court explained the significance of the "time-notice rule" in premises liability cases as follows:

> The so-called "time-notice rule" is based on the premise that temporal evidence best indicates whether the owner had a reasonable opportunity to discover and remedy a dangerous condition. **An employee's proximity to a hazard, with no evidence indicating how long the hazard was there, merely indicates that it was *possible* for the premises owner to discover the condition, not that the premises owner reasonably *should* have discovered it.** Constructive notice demands a more extensive inquiry. Without some temporal evidence, there is no basis upon which the factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition.

> What constitutes a reasonable time for a premises owner to discover a dangerous condition will, of course, vary depending upon the facts and circumstances presented. And proximity evidence will often be relevant to the analysis. Thus, if the dangerous condition is conspicuous as, for example, a large puddle of dark liquid on a light floor would likely be, then an employee's proximity to the condition might shorten the time in which a jury could find that the premises owner should reasonably have discovered it. Similarly, if an employee was in close proximity to a less conspicuous hazard for a continuous and significant period of time, that too could affect the jury's consideration of whether the premises owner should have become aware of the dangerous condition. **But in either case, there must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition.** Otherwise, owners would face strict liability for any dangerous condition on their premises, an approach we have clearly rejected.

81 S.W.3d at 815-16 (emphasis added).

Moreover, Plaintiffs have not presented any competent evidence that Defendant should have known that the area near the kitchen where Mrs. McCarty fell was "prone to spills" or "unreasonably dangerous.[1]  Plaintiffs point to Beard's testimony in which he acknowledged that it was "possible" for employees to track or spill liquid or food while traversing through this area.  This evidence, however, is insufficient to raise a genuine dispute of material fact as to whether Defendant should have known that the area was "prone to spills" or unreasonably dangerous, particularly in the absence of any evidence regarding prior accidents that would have put Defendant on notice of the allegedly dangerous condition.  *See Muro*, 341 S.W.3d at 5.  Additionally, Beard qualified his responses on this topic by stating, *"In the realm of possibilities, this could happen*."[2]

Mrs. McCarty testified that, after her accident, unidentified patrons told her that the floor in this area of the restaurant was known to be dangerous. She also testified that she believed that Defendant's employees were responsible for the condition of the floor because of the amount of employee traffic in that area, the amount of food being served from the kitchen and dirty dishes being returned to the kitchen, and because water was being served from a service station. Mrs. McCarty's testimony that the allegedly dangerous condition was well known and was created by Defendant, however, is based entirely on inadmissible hearsay and speculation, and is not competent summary judgment evidence of Defendant's actual or constructive knowledge of the condition.  Plaintiffs could have, but did not develop this issue by deposing persons who allegedly have personal knowledge of these matters.  Additionally, even if the court were to assume that spills are more likely

---

[1] Pls.' Resp. 10.

[2] Pls.' App. 89 (emphasis added).

**Memorandum Opinion and Order - Page 13**

to occur in an area near a restaurant kitchen frequented by waitstaff, it would not relieve Plaintiffs of their burden of establishing the requirements for its premises liability claim, including the requirement that they come forward with evidence to show how long the unidentified substance was on the floor.  *See Reece*, 81 S.W.3d at 817 ("[A]ssuming the fairly obvious fact that spills are more likely to occur in a self-serve beverage area, that does not relieve Reece of her burden to prove the required premises-liability elements.")

Moreover, in light of Greer's testimony that Mrs. McCarty lost her balance or "misstepped" while walking on crutches rather than slipping, and Mrs. McCarty's testimony that she almost had a similar accident three months earlier at another restaurant while walking on tile floor with her crutches, it is, as Defendant contends, "equally (if not more) plausible [an] inference that she simply lost her footing while using her crutches instead of slipping on some unidentifiable foreign substance on the floor with mysterious properties." Def.'s Mot.12.  As Plaintiffs have not identified any other evidence that would make their proposed inference more plausible than the others identified, evidence that Mrs. McCarty fell in an area of the restaurant near the kitchen creates nothing more than a mere suspicion that Defendant created the alleged condition.  *See Gonzalez*, 968 S.W.2d at 936; *see also Muro*, 341 S.W.3d at 5-6 ("Based on Mr. Guerra's testimony, one could infer either that UTEP did, or did not create the remnant. Ms. Muro has not identified any additional evidence that would make one inference more plausible than the other. Without more, Mr. Guerra's testimony creates nothing more than the mere suspicion that UTEP created the condition, and therefore, cannot be the basis of a fact question.").

Plaintiffs also contend that because Defendant requires its employees to wear slip-resistant footwear and uses slip-resistant floor mats, referred to by Beard as "shark mats," in areas of the

**Memorandum Opinion and Order - Page 14**

restaurant, other than the area where Mrs. McCarty fell, Defendant knew or should have known that the area where Mrs. McCarty was unreasonably dangerous and should have: (1) placed floor mats in the area where she fell; and (2) warned her to wear slip-resistant shoes. This argument based on circumstantial evidence is far too attenuated and slender a reed to create a genuine dispute of material fact, and Plaintiffs have not cited to any authority that a premises owner who takes general safety precautions in the operation of its business can be held liable for failure to warn its customers of the possibility of unknown, remote dangerous conditions.  Moreover, the undisputed evidence in this case is that floor mats or "shark mats" were only used in areas of the restaurant known to have "a lot of water" on the floors, such as the Hobart dishwashing area, and Plaintiffs have presented no competent evidence that the area where Mrs. McCarty fell was known by Defendant, or anyone else, to be wet or slippery.  Pl.'s App. 88-89.  As previously noted, there is also no competent evidence that prior accidents have occurred in this area that would have put Defendant on notice of the allegedly dangerous condition.  Accordingly, Plaintiffs have failed to raise a genuine dispute of material fact as to whether Defendant had constructive knowledge of the unidentified substance on the floor of Houston's where Mrs. McCarty fell.

## V.    Conclusion

For the reasons stated, the court concludes that no genuine dispute of material fact exists as to Plaintiffs' premises liability claim, and Hillstone is entitled to judgment as a matter of law as to this claim.  Accordingly, the court **grants**  Defendant Hillstone Restaurant Group's Motion for Summary Judgment (Doc. 46) and **dismisses with prejudice** Plaintiffs' premises liability claim and this action against Hillstone.  The court will enter a judgment in favor of Hillstone by separate document, as required, pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**It is so ordered** this 19th day of September, 2016.

Sam A. Lindsay
United States District Judge